UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

|  |  |  |
|---|---|---|
| DENNY DENSMORE, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 1:15-CV-0096-JL |
| v. | ) ) | |
| NATIONAL BOARD OF MEDICAL EXAMINERS, | ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM IN SUPPORT OF THE MOTION TO DISMISS OF THE
DEFENDANT NATIONAL BOARD OF MEDICAL EXAMINERS**

This Memorandum supports the Motion of the Defendant, National Board of Medical Examiners ("NBME"), to Dismiss the Complaint filed by the Plaintiff Denny Densmore ("Densmore" or the "Plaintiff") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**INTRODUCTION**

This is not the first complaint Densmore has filed in federal court alleging a violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and based on NBME's denial of his request for an accommodation of extra time in taking the United States Medical Licensing Examination. In May 2014, Densmore filed an identical action in the United States District Court for the District of South Carolina (Charleston Division) seeking identical relief and relying on the same incorrect standard for determining "disability" under the ADA as is set out in this Complaint. *See* Complaint, *Densmore v. NBME*, No. 2:14-cv-2082-MBS (D.S.C. 2014), attached as Exhibit A (the "SC Complaint").

NBME filed a motion to dismiss the S.C. Complaint on the grounds that the statute of limitations had expired and that Densmore had failed to state a claim under the ADA because he had not adequately alleged a "disability" under the Act. The District Court in South Carolina dismissed the Complaint based on the statute of limitations and thus did not reach the issue of whether Densmore had stated a cause of action given his reliance on the incorrect standard for determining a "disability."[1] *See* Order, *Densmore v. NBME*, No. 2:14-cv-2082-MBS (D.S.C. 2014), attached as Exhibit B. Less than a year later, Densmore filed this suit in New Hampshire.

Plaintiff's Complaint alleges that he is a "disabled" individual under the ADA because he suffers from learning disabilities that substantially limit his ability to perform the major life activities of reading and learning as compared to "most people of similar educational background." But that is not the standard of the Act. The ADA does not measure disability in comparison to other medical students, or other individuals who have completed college and some graduate education, medical school or otherwise. Rather, it measures whether an "impairment" "substantially limits" a major life activity (and thus constitutes a "disability") in comparison to "most people in the general population." 29 C.F.R. § 1630.2(j); *see also* 28 C.F.R. § 36, App. C.[2] Thus, in order to set out a cause of action under the Act, a plaintiff must allege that he or she has a disability that "substantially limits" his or her ability " . . . to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2.

Although proceeding in a new jurisdiction, Densmore realleges an identical and fatally flawed cause of action in this Court. Put simply, Densmore has not only misstated the standard

---

[1] Because the ADA does not have a statute of limitations, the District Court in South Carolina found that South Carolina's one-year statute of limitations applied. *See Ex. B.* The analogous statute of limitations in New Hampshire, RSA 508:4, is three years. *See Durante v. Cnty. of Belknap, New Hampshire*, No. CV-03-333-SM, 2004 WL 1689743, at *1 (D.N.H. July 28, 2004); *Doukas v. Metro. Life Ins. Co.*, 882 F. Supp. 1197, 1200 (D.N.H. 1995).

[2] Appendix C to 28 C.F.R. § Pt. 36 is titled "Guidance on ADA Regulation on Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities" and is meant to provide guidance on 28 C.F.R. § 36.101, *et seq.*, the regulations promulgated by the Department of Justice to implement Title III of the ADA.

necessary to allege a "disability" under the Act, he persists in alleging a standard that appears nowhere in the Act or applicable regulations. As a result, he has failed to state a cause of action under the ADA.

## STATEMENT OF FACTS[3]

Defendant NBME is a not-for-profit organization that together with the Federation of State Medical Boards develops and administers the United States Medical Licensing Examination ("USMLE"). Complaint (Doc. 1), ¶ 3. The USMLE is a standardized test consisting of three "Steps" and is used as part of the process for licensing physicians in the United States. *Id.* The USMLE Step 2 Clinical Knowledge (CK) and Step 2 Clinical Skills (CS) are the examinations at issue here. *Id.* ¶¶ 7, 10-11.

By way of background, as a private entity that offers examinations related to licensing for medical professionals, NBME must comply with Section 12189 of the ADA, which requires it to "offer such examinations . . . in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 42 U.S.C. § 12189. NBME must therefore insure that "persons who qualify as disabled under the Americans with Disabilities Act receive reasonable accommodations during test-taking." *Scheibe v. Nat'l Bd. of Med. Examiners*, 424 F. Supp.2d 1140, 1143 (W.D. Wis. 2006). At the same time, to protect the integrity of test scores and the public's interest in the medical licensure process, NBME must also insure that "no candidate or group of candidates receives an unfair advantage in the administration of the exam." *Id* at 1142. *See also Powell v. Nat'l Bd. of Med. Examiners,* 364 F.3d 79, 88-89 (2d Cir.) *opinion corrected*, 511 F.3d 238 (2d Cir. 2004) ("[NBME's] procedures are designed to ensure that individuals with *bona fide* disabilities receive accommodations, and

---

[3] Except for statements by way of background, all facts set out in this section are taken from the Complaint.

that those without disabilities do not receive accommodations that they are not entitled to, and which could provide them with an unfair advantage when taking the medical licensing examination."); *Mahmood v. Nat'l Bd. of Med. Examiners*, No. CIV.A. 12-1544, 2012 WL 2368462, at *5 (E.D. Pa. June 21, 2012) (noting that NBME has a public interest in keeping its testing services professional and reliable).

Densmore alleges that he is a former medical student at the Medical University of South Carolina ("MUSC"). Complaint (Doc. 1), ¶¶ 1, 7. Densmore completed his fourth and final year at MUSC but was unable to graduate with his class in May 2008. *Id.* ¶ 7. MUSC requires students to pass the Step 2 CK and Step 2 CS exams to graduate with the M.D. degree. *Id.* ¶¶ 10-11. Densmore sat for both Step 2 exams on three separate occasions but was unable to achieve passing scores. *Id.* ¶ 7. He asserts that as a result, he "has been unable to graduate from medical school education in the same manner as his MUSC classmates[,]" and was dismissed from MUSC. *Id.* ¶¶ 7, 10, 11 and 19.

Densmore claims to be disabled based on a diagnosis of the learning disabilities of Attention Deficit Hyperactivity Disorder ("AD/HD") and reading disorder. *Id.* ¶ 12. He asserts that this diagnosis constitutes a disability as defined in the ADA because these learning disabilities "substantially limit his major life activities of reading and learning." *Id.* ¶ 18. More specifically, Densmore defines his disability as follows:

- "Densmore's learning disability impairs his reading ability to the point that his academic performance level as measured by standardized testing is lower than that expected *in comparison to most people of similar educational background, id.*¶ 8;

- "Densmore has definite learning disabilities that substantially limit his major life activities of reading and learning *as compared to most people of similar educational background, id.* ¶ 18;

- "His disability precludes him from learning in the same manner and in the same amount of time as *most people of similar education and training, id.*¶ 28;

- "This learning disability substantially limits him in the activities of reading and learning, in comparison to *most people of similar education and training such as other medical students taking the Step 2 exams, id.*¶ 28.

(Emphases added.)  In sum, Densmore's claim is that he is disabled because he cannot read or learn in the same manner or rate as people who have his education.  While he does not define what the "similar education and training" constitutes, it is apparent from Paragraph 28 of his Complaint that he claims to be disabled relative to "other medical students taking the Step 2 exams."

Densmore requested the accommodation of extra time for the exams on the basis of his alleged learning disabilities, which NBME denied.  *Id.* ¶¶ 10-11.  NBME's denial of the requested accommodation is alleged to violate his rights under the ADA.  *Id.* ¶ 18.  As a result, he seeks a permanent injunction (1) prohibiting NBME from refusing to accommodate Plaintiff's alleged disability, and (2) compelling NBME to comply with the ADA by providing Plaintiff the requested time accommodation for the Step 2 exams and for any "Step Exams for which [Plaintiff] is otherwise entitled to sit and for which he otherwise makes proper application."  *Id.* ¶ 37.

## STANDARD OF REVIEW

On a motion to dismiss, "[the court's] analysis centers on the complaint, and [the court] accept[s] all well-pleaded factual allegations as true and draw[s] all a [sic] reasonable inferences in favor of the plaintiff."  *In re Genzyme Corp. Sec. Litig.*, 754 F.3d 31, 40 (1st Cir. 2014).  "In order to survive a motion to dismiss, the complaint must plead sufficient facts to render the plaintiff's entitlement to relief plausible, and not merely possible."  *Id.*, citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007).

The plausibility inquiry requires a two-step process. *Garcia-Catalan v. United States*, 734 F.3d 100, 103 (1st Cir. 2013). "First, the court must distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *Id.* (internal quotations omitted). "Second, the court must determine whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotations omitted).

"In determining whether a complaint crosses the plausibility threshold, 'the reviewing court [must] draw on its judicial experience and common sense.'" *Id.*, *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). While "[t]his context-specific inquiry does not demand a high degree of factual specificity . . . the complaint must contain more than a rote recital of the elements of a cause of action." *Garcia-Catalan*, 734 F.3d at 103 (internal quotations omitted). *See also Medina-Velazquez v. Hernandez-Gregorat*, 767 F.3d 103, 109 (1st Cir. 2014) (the court shall not "credit allegations that merely parrot the elements of the cause of action") (internal quotations omitted).

## ARGUMENT

### DENSMORE HAS NOT STATED A CAUSE OF ACTION UNDER THE ADA: THE ACT ESTABLISHES DISABILITY RELATIVE TO THE MAJORITY OF THE GENERAL POPULATION, NOT GRADUATE OR MEDICAL STUDENTS

In order to state a cause of action under the ADA, a plaintiff must allege a condition that constitutes an impairment that limits a major life activity relative to the average person, not persons with a similar education as the person claiming disability. This makes sense since, for example, many law students may read slower than the average law student, but this does not make them "disabled," requiring accommodation as a matter of law. The problem with Densmore's Complaint is that as pled, he has not alleged a legally cognizable disability relative

to "most people in the general population." Instead, he claims to be disabled only in comparison to "most people of a similar educational background," which, as defined by a fair reading of the Complaint, means most people who are in medical school or have an equivalent education. The distinction is not trivial; it is the basis on which the ADA measures, and requires, accommodation for a legally recognized disability. Densmore's Complaint does not come close to meeting this standard.

To state a cause of action under Title III of the ADA, a plaintiff must set out facts sufficient to plausibly allege that he or she is disabled under the statute. *See Graves v. Brookfield Suites Hotel & Convention Ctr.*, No. 11-CV-01060, 2012 WL 3941774, at *1 (E.D. Wis. Sept. 10, 2012) ("dismiss[ing] plaintiff's claim under the ADA because he fails to plausibly allege that he is disabled"); *Smith-Jeter v. City of Columbia*, No. 3:10-CV-1188-JFA-JRM, 2012 WL 762075, at *2 (D.S.C. Mar. 8, 2012) *aff'd*, 474 F. App'x 260 (4th Cir. 2012) ("Plaintiff failed to assert facts that plausibly show that she had a disability because she merely stated that she is disabled."). The ADA defines "disability," in pertinent part, as "a physical or mental impairment that substantially limits one or more major life activities[.]" 42 U.S.C. § 12102(1). Thus, a plaintiff must allege facts sufficient to plausibly establish that (1) he suffers from a physical or mental impairment; (2) the impairment affects one or more major life activities; and (3) the impairment "substantially limits" the alleged major life activity. 42 U.S.C. § 12102(1). *See also Ramos-Echevarria v. Pichis, Inc.*, 659 F.3d 182, 187 (1st Cir. 2011) (applying the three-part test to determine whether an impairment qualified as a disability under the ADA); *Heiko v. Colombo Sav. Bank,* 434 F.3d 249, 254 (4th Cir. 2006) (same). An allegation of a diagnosed impairment is not sufficient to allege a "disability" within the meaning of the ADA. *See* 29 C.F.R. § 1630.2(j) (providing that "not every impairment will constitute a disability within the meaning

of [the ADA]"); *see also Love v. Law Sch. Admission Council*, 513 F. Supp.2d 206, 226 (E.D. Pa. 2007) (noting that "[a]n impairment and disability are two different things"). Indeed, the fact that a plaintiff "is clinically diagnosed as having a learning impairment does not automatically mean that he is entitled to an accommodation under the ADA." *Id.*

Densmore has adequately alleged facts to establish that he has the type of "mental impairments" recognized under the ADA by alleging that he suffers from the learning disabilities of AD/HD and reading disorder. *See* 29 C.F.R. § 1630.2 ("mental impairment means— . . . (2) Any mental or psychological disorder, such as . . . *specific learning disabilities*"). Likewise, Densmore pleads the recognized "major life activities" of reading and learning under the ADA. *See* 42 U.S.C. § 12102 (" . . . major life activities include, but are not limited to, . . . learning, reading . . . ."). But he has failed to sufficiently plead facts to establish that his alleged learning disabilities "substantially limit" the activities of reading and learning.[4]

Although the Act itself does not establish the comparative basis by which a legal "disability" is measured, regulations adopted under the Act establish the applicable standard. 29 C.F.R. § 1630.2 sets out the test as follows: "An impairment is a disability . . . if it substantially limits the ability of an individual to perform a major life activity as compared to *most people in the general population*." 29 C.F.R. § 1630.2(j) (emphasis added). *See also Weaving v. City of Hillsboro*, 763 F.3d 1106, 1111-12 (9th Cir. 2014) *cert. denied sub nom. Weaving v. City of Hillsboro, Or.*, 135 S.Ct. 1500 (2015); *Akerson v. Pritzker*, 980 F. Supp.2d 18, 29 (D. Mass. 2013).

The ADA was amended in 2008, 42 U.S.C. § 12101, *et. seq.*, for the purpose of "reinstating a broad scope of protection" available to individuals under the Act. ADA

---

[4] In accepting facts as true for purposes of this Motion, as it is required to do, NBME does not concede that evidence in this case would establish that Densmore actually has such disabilities. This is a factual matter to be proven by Densmore.

Amendments Act of 2008, Pub. L. No. 110-325 § 2(b)(1) (2008).  As amended, "[t]he definition of disability in [the Act] shall be construed in favor of broad coverage of individuals[.]"  42 U.S.C. § 12102(4)(A).  But the amendments did not change the comparative basis for determining when an impairment constitutes a disability.  "The comparison to most people in the general population continues to mean a comparison to other people in the general population, *not a comparison to those similarly situated*."  29 C.F.R. § Pt. 1630, App.[5] (emphasis added).  Thus, in order to state a claim under the ADA, a plaintiff must allege that his or her disability substantially limits a major life activity in comparison to most people in the general population.

Densmore's Complaint does not allege such an impairment, and thus does not state a cause of action under the Act.  As set out above, Densmore contends only that his disabilities "substantially limit his major life activities of reading and learning as compared to *most people of similar educational background.*"  Complaint ¶ 18 (emphasis added).  Densmore alleged a similar standard in his S.C. Complaint.  *See* Ex. A.  There, he also claimed impairment:  "as compared to most people of a similar educational background" (¶ 13), "most people of similar education and training" (¶ 23), and "most people of similar education and training other medical students taking the Step 2 exams [sic]" (*id.*).  In both this Complaint and the S.C. Complaint, Densmore asserts that 28 CFR, pt. 36, App. B constitutes the authority for this purported standard.

---

[5] The Appendix to 29 C.F.R. § Pt. 1630 is titled "Interpretive Guidance on Title I of the Americans with Disabilities Act" and is meant to provide guidance on  29 C.F.R. § 1630.1, *et seq.*, the regulations promulgated by the Equal Employment Opportunity Commission to implement Title I of the ADA. While Densmore brings this action under Title III of the ADA, courts follow 29 C.F.R. § 1630.2 in interpreting "disability" under the ADA.  *See, e.g.*, *Caldarola v. Rosner Realty LLC*, No. 13-80493-CIV, 2014 WL 537398, at *3 (S.D. Fla. Feb. 11, 2014); *Fox v. Vitamin Cottage Natural Grocers*, No. 05-CV-00962-REB-PAC, 2006 WL 2308492, at *8 (D. Colo. Aug. 9, 2006); *Rush v. Nat'l Bd. of Med. Examiners*, 268 F. Supp.2d 673, 678 (N.D. Tex. 2003).  Moreover, courts are in agreement that "Congress clearly intended that the term 'disability' (and therefore, the phrase 'substantially limits') to have a uniform meaning throughout the ADA."  *Gaylor v. Greenbriar of Dahlonega Shopping Ctr., Inc.*, 975 F. Supp.2d 1374, 1385 n.7 (N.D. Ga. 2013); *see also Love*, 513 F. Supp.2d at 223.

> The "substantially limited" standard for the major life activity of learning, reading, or writing, is established when "the individual's important life activities are restricted as to the condition, manner, or duration under which they can be performed in comparison to most people of similar education and training. 28 CFR, pt. 36, App. B.

Complaint, ¶ 27; Ex. A, ¶ 22. Not only is this not the correct standard for demonstrating a "disability" under the ADA, the language cited does not exist anywhere in the ADA or its accompanying regulations. Put simply, the standard purportedly at 28 C.F.R., pt. 36, App. B. appears to have been created from thin air. And Densmore has conceded as much.

After Densmore included this purported quote from the regulations in his S.C. Complaint, NBME's counsel questioned the citation:

> Upon a diligent and thorough review of the database of the Code of Federal Regulations dating back to 1984, available on Westlaw, it does not appear that the language quoted by Plaintiff has ever been the standard stated in the Code or any appendices to the Code. Moreover, [Densmore's] counsel has litigated other ADA claims and knows the correct standard. For example, in a recent case filed by [Densmore's] counsel in the United States District Court for the Northern District of Texas, the Complaint and Amended Complaint stated as follows: "[t]he 'substantially limited' standard for the major life activity of learning, reading, or writing, is established when 'the individual's important life activities are restricted as to the condition, manner, or duration under which they can be performed *in comparison to most people*[.]" *See Gray v. Texas Coll. Of Osteopathic Med.*, Compl. filed April 10, 2014 and Amended Compl. filed June 19, 2014, C.A. No. 3:14-CV-0135 (N.D. Tx. 2014).

NBME's Memorandum in Support of Motion to Dismiss, *Densmore v. NBME*, No. 2:14-cv-2082-MBS (D.S.C. 2014), attached as Exhibit C, p. 12. Similarly, counsel in this case has not been able to find the language on which Densmore relies.

Given the contention by NBME that the standard cited in the S.C. Complaint did not exist, one would have expected Densmore to identify the language on which he relied in his Opposition to the motion to dismiss. But he did not. Instead, the Opposition described the applicable standard as follows: "To qualify as impaired under the ADA, the alleged impairment must involve a basic activity *the average person in the population can* perform with little or no

- 10 -

difficulty." Opposition to Motion to Dismiss, *Densmore v. NBME*, No. 2:14-cv-2082-MBS (D.S.C. 2014), attached as Exhibit D, p. 5. And even more remarkable, Densmore's Opposition cited 28 CFR, pt. 36, App. B—the very authority on which he relied for his "most people of similar education and training" standard—as containing a different, albeit correct, standard:

> The DOJ regulations find an individual substantially limited "when the individual's important life activities are restricted as to the condition, manner, or duration under which they can be performed in comparison to most people." 28 C.F.R., pt. 36, Apx. B. The EEOC defines "substantially limited" in a similar manner as a "[s]ignificant[] restrict[ion] as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which *the average person in the general population c*an perform that same major life activity." 29 C.F.R. § 1630.2(j) (2001).

Exh. D, p. 6 (emphasis added). Thus, Densmore's counsel plainly knew the correct standard and conceded that standard in federal court – at least in South Carolina.

But despite that knowledge and that concession, that same counsel (who represents Densmore in this Court) once again alleges the erroneous standard.[6] Moreover, he also again cites 28 C.F.R., pt. 36, App. B to support his claim that Densmore is disabled relative to "most people of similar education and training," when the regulation does not contain that language and he has all but admitted as much in South Carolina. This is simply inexplicable.

The distinction between Densmore's alleged standard and the standard set out in the Act is critical. The Act requires that a plaintiff allege that he is disabled relative to average persons, not average college graduates, graduate students, or medical students. On the allegations in this Complaint, Densmore has not satisfied that standard. Moreover, it appears that he cannot amend his Complaint to do so. In his South Carolina Opposition, although citing the correct test,

---

[6] Although Densmore's South Carolina counsel (who has an office in Texas) has not appeared in this action, the undersigned counsel has been informed by Densmore's New Hampshire counsel that Texas counsel will file a *pro hac vice* motion in this case.

- 11 -

Densmore never alleged that he met the accurate standard, stating only that he "is a disabled individual, as that term is defined and construed under the [ADA]." Ex. D, p. 1.

"The tenet that this court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678 (2009). Given the history of this case, and Densmore's failure to allege a cause of action under the ADA, that is particularly true here.

### CONCLUSION

Densmore bases his Complaint on a definition of "disability" that appears nowhere in the ADA or the regulations adopted under that Act. Densmore did not offer any support for this standard in South Carolina and cannot do so here. Absent an allegation that he is disabled within the meaning of the Act, he has failed to state a claim as a matter of law. Accordingly, the Complaint should be dismissed.

Respectfully submitted,

NATIONAL BOARD OF MEDICAL EXAMINERS

Date: May 1, 2015

By its attorneys,

MCLANE, GRAF, RAULERSON AND MIDDLETON, PROFESSIONAL ASSSOCIATION

By: /s/ Wilbur A. Glahn, III
Wilbur A. Glahn, III, Bar No. 937
Alexandra L. Geiger, Bar No. 20087
900 Elm Street, P.O. Box 326
Manchester, NH 03105
Phone: (603) 625-6464
bill.glahn@mclane.com
alexandra.geiger@mclane.com

Certificate of Service

      I certify that, on May 1, 2015, I served the foregoing via ECF electronic transmission in accordance with the Court's Administrative Procedures for ECF to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants, if any.

      /s/ Wilbur A. Glahn, III
      Wilbur A. Glahn, III, Bar No. 937