# Exhibit D

UNITED STATES DISTRICT COURT
DISTRICT COURT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Denny Densmore, § | | |
| PLAINTIFF, § | | |
| § | | |
| v. § | | |
| § | CAUSE NO. 2:14-CV-02082-MBS | |
| NATIONAL BOARD OF § | | |
| MEDICAL EXAMINERS, § | | |
| DEFENDANT. § | | |

## MEMORANDUM OF OPPOSITION

**To the Honorable United States District Court Judge:**

Plaintiff, Denny Densmore ("Densmore"), files his Memorandum of Opposition to the National Board of Medical Examiner's ("NBME") Motion to Dismiss and states the following.

## I
## NATURE OF THE CASE

Densmore completed four years of study at the Medical University of South Carolina ("MUSC") and is a disabled individual, as that term has been defined and construed under the Americans with Disabilities Act ("ADA"). The NBME is a private entity that offers the examinations necessary for medical licensure in the United States and, as such, must comply with the ADA with respect to disabled individuals.

Densmore is required to pass the exams offered by the NBME to become licensed, but cannot pass such exams without reasonable test taking accommodations. In contravention of the ADA, the NBME has and continues to deny Densmore reasonable test taking accomodations.

The NBME moves to dismiss, claiming that Densmore's complaint falls outside of limitations and that he fails to provide facts sufficient to support his disability. Accepting

**Memorandum of Opposition – Page 1**

Densmore's allegations as true and drawing all inferences in his favor, as this Court must, the motion should be denied.

The NBME's limitations argument, while superficially appealing, is a red herring. The NBME notes its March 20013 ADA violation where it denied Densmore reasonable test taking accommodations and suggests that because *that* violation was more than one year before the Complaint was filed, Densmore is time barred from asserting his ADA claim. But the NBME should not be given credit or absolved of its ADA requirements because it violated the ADA "early and often." Title III of the ADA requires the NBME to provide reasonable test taking accommodations to disabled individuals and that obligation is not abated or absolved simply because *one* of the NBME's ADA violations occurred more than one year before the Complaint was filed. Although some of the NBME's ADA violations – including *the one* referenced in the NBME's memorandum – occurred more than one year before the Complaint was filed, the NBME's most recent denial of test taking accommodations to Densmore – and most recent ADA violation of Densmore's rights – occurred in October 2013, well within the one-year limitations period suggested by the NBME.

Additionally, Densmore's Complaint provides that he suffers a recognized ADA disability – a learning disability. Densmore's Complaint plainly identifies his disabilities as ADHD and a reading disorder, both recognized ADA disabilities. To the extent the Court deems the Complaint to be factually insufficient, Densmore respectfully asks for the opportunity to amend. As the Court is aware, the 2008 amendments to the ADA instruct that "[t]he definition of disability in [the ADA] shall be construed in favor of broad coverage on individuals under this Act." 42 USC § 12102(4)(A)  Dismissal for any factual deficiencies setting forth Densmore's specific disabilities would be in contravention of this instruction.

**Memorandum of Opposition – Page 2**

## II
## STATEMENT OF FACTS

Densmore is an individual with an ADA-recognized disability. (*e. g.,* Complaint, paragraphs 2, 7, 8, 13, 21, 22 & 23)

The NBME is a private entity that offers certain examinations related to educational and occupational certification. (Complaint, paragraph 3)

The NBME is required to provide test taking accommodations to individuals with disabilities. (42 USC § 12189)

The NBME has unlawfully refused Densmore ADA test taking accommodations, with its most recent violation occurring in October, 2013. (Exhibit A)[1]

## III
## ARGUMENT

### 1. Who is a covered entity?

The ADA requires covered entities to provide reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee unless such covered entity can demonstrate that the accommodation would impose an undue hardship. 42 U.S.C. § 12112(b)(5)(A). The ADA specifically states that

> Any person that offers examinations or courses related to applications, licensing, or credentialing for secondary and post secondary education, professional, or trade purposes shall offer such examination or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals. 42 U.S.C. § 12189.

---

[1] Exhibit A is an October 8, 2013, letter from Densmore's counsel to a NBME representative requesting it accommodate Densmore's disabilities. The NMBE violated Densmore's ADA rights when it refused to offer test taking accommodations to Densmore in October of 2013. The attachment to the letter was a draft of the Complaint, and is not attached here for sake of economy.

Likewise, with due regard to the rule that instructs that "brevity is expected," counsel refers the Court to the authority set forth in the NBME's footnote 20, which discusses when courts may consider matters "outside the complaint," such as Densmore's Exhibit A.

**Memorandum of Opposition – Page 3**

The Department of Justice ("DOJ") regulations promulgated under Title III of the ADA require that examinations covered by 42 U.S.C. §12189 be selected and administered in a manner that accurately reflects the individual's aptitude or achievement level rather than reflecting the individual's specific impairment. 28 C.F.R. § 36.309(b)(1)(i).

The NBME administers the USMLE, a nationwide examination for prospective physicians which must be successfully completed to obtain a medical license in the United States. Accordingly, the NBME is a covered entity and is required to comply with the provisions of Title III of the ADA. *See Gonzales v. Nat'l Bd. of Med. Exam;rs,* 225 F.3d 620, 626 (6th Cir. 2000).

### 2. What is a disability under the ADA?

For purposes of the ADA, a person is disabled if he or she suffers from a "physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42. U.S.C. § 12102(2)(A). Courts have broken this down into a three-part decision process: (1) whether the plaintiff's problems constitute a mental impairment; (2) whether the life activities upon which plaintiff relies are major life activities; and (3) whether plaintiff's impairment substantially limits these major life activities. *Bragdon v. Abbott*, 524 U.S. 624, 641 (1998); *Gonzales*, 225 F.3d at 627. While the ADA fails to define the terms necessary to apply this standard, and no agency has authority to issue regulations to implement and define the general provisions of the ADA, courts have used both Department of Justice ("DOJ") and Equal Employment Opportunity Commission ("EEOC") regulations to create a framework for answering these three questions. *See Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 193-96 (2002).

#### i. Physical & Mental Impairments & Major Life Activities

**Memorandum of Opposition – Page 4**

The DOJ regulations define physical or mental impairment as including "specific learning disabilities." 28 C.F.R. § 36.104. Learning disabilities affecting one's ability to read are mental impairments. *See, e.g., Gonzales*, 225 F.3d at 627. While courts have pointed out that a psychologist or clinician's diagnosis of a disability is not binding upon the ADA, numerous court's relying upon such diagnosis have held that learning disabilities affecting one's ability to read, such as dyslexia and lack of automaticity, are mental impairments under the ADA. *Gonzales*, 225 F.3d at 627; *Baer v. Nat'l Bd. of Med. Exam'rs*, 392 F. Supp. 2d 42, 47 (D. Mass. 2005) (holding that although plaintiff's well-documented weakness in reading fluency and comprehension was an impairment, the facts in the case did not evidence an impairment that would "substantially limit" her ability to read); *Bartlett v. N.Y. State Bd. of Law Exam'rs,* No. 93-CIV4986-SS, 2001 WL 930792 (S.D.N.Y. 2001) (holding that student's lack of automaticity was an impairment that substantially limited her ability to read entitling her to accommodation on the New York Bar Exam).

To qualify as impaired under the ADA, the alleged impairment must involve a basic activity the average person in the general population can perform with little or no difficulty. 29 C.F.R. § 1630.2(i). The DOJ regulations include "walking, seeing, hearing, speaking, breathing, *learning* and working" as major life activities. 28 C.F.R. § 36.104(2). In interpreting the regulations, courts have concluded that major life activities include *reading* and writing as part of the major life activity of learning. See *Gonzales*, 225 F.3d at 626; *Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 155 (1st Cir. 1998); *Bartlett v. N.Y. State Bd. of Law Exam'rs*, 226 F.3d 69, 80 (2nd Cir. 1998). In this case, Densmore suffers from a reading disorder and the NBME cannot dispute that "reading" is a major life activity.

**Memorandum of Opposition – Page 5**

### ii. "Substantially Limited" Generally

To qualify as disabled under the ADA, a claimant must show the limitation on the affected major life activity is substantial. 42 U.S.C. § 12102(2)(A). "Substantially limit[ing]," is an impairment that limits an individual in "a major way, to a considerable amount, or to a large decree." *Gonzales,* 225 F.3d at 627, n. 12. The burden of proving an impairment substantially limits a major life activity "is not necessarily an onerous one, and in fact, certain limitations will 'ordinarily' qualify as disabilities." *Bartlett,* 226 F.3d at 80. Determining whether an individual is "substantially limited" is a question of both law and fact. *Id.*

The DOJ regulations find an individual substantially limited "when the individual's important life activities are restricted as to the condition, manner, or duration under which they can be performed in comparison to most people." 28 C.F.R., pt. 36, Apx. B. The EEOC defines "substantially limited" in a similar manner as a "[s]ignificant[] restrict[ion] as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j) (2001). In determining whether an individual is substantially limited in a major life activity, the regulations instruct that the following factors should be considered: "[t]he nature and severity of the impairment; [t]he duration or expected duration of the impairment; and [t]he permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment." 29 C.F.R. §§ 1630.2(j)(2)(i)-(iii).

Here, Densmore's Complaint alleges his particular disabilities. No evidence has yet to be

**Memorandum of Opposition – Page 6**

developed yet, though, to test those allegations. All of the considerations set forth in the foregoing paragraphs are more properly evaluated on motion for summary judgment and not now on the NBME's motion to dismiss.

### 3. Limitations

Whether the Court applies the NBME's suggested one-year statute of limitations, the South Carolina three-year personal injury statute of limitations, or the "catch all" four-year statute of limitations set forth in the 2008 ADA amendments, the result is the same. The NBME unlawfully refused to provide Densmore test taking accommodations in October 2013, well within one year of Densmore's instant Complaint. The fact that the NBME may have also violated Densmore's ADA rights outside of applicable limitations does not give the NBME carte blanche to commit additional, discrete, ADA violations, with impunity.

While superficially appealing, the NBME's reliance on its March 2013 ADA violation is a red herring. The NBME was required in October 2013 – and remains required today – to provide reasonable test taking accommodations. The NBME violated Densmore's ADA rights in October 2013 and remains in violation of the ADA today. Each discrete act that violates the ADA has its own limitations period.

### 4. Densmore Sufficiently Pleaded his Disability

Densmore's Complaint sufficiently pleads his learning disability. In the event the Court demands more specificity, Densmore respectfully asks for the opportunity to amend with more specificity. Because the 2008 ADA amendments were made, primarily to reiterate legislative intent that "disability" is to be broadly construed, it would be an injustice to dismiss Densmore's Complaint on this basis.

### 5. The Motion to Dismiss is Really a Motion for Summary Judgment

**Memorandum of Opposition – Page 7**

The NBME's motion to dismiss is really a motion for summary judgment that deprives Densmore of the opportunity to present traditional summary judgment evidence. The NBME relies on its one ADA violation in March 3013 (which is not evidence) and its unsupported assertion that Densmore is not disabled (which is not evidence) to deprive Densmore access to the protection of this Court. The NBME will have the opportunity to file a motion for summary judgment after the parties have had a chance to discover and develop admissible evidence. Respectfully, the NBME's motion is premature and granting the relief it requests deprives Densmore access to this Court to enforce his ADA rights.

The only "evidence" the NBME relies on is its March 2013 denial letter. While this is "evidence" of nothing, it certainly is *no evidence* that exculpates or excuses the NBME's ADA violations within one year of Densmore's complaint. The just and prudent course is to deny the instant motion to dismiss and allow the parties to proceed with discovery. Granting the motion completely denies Densmore the opportunity to purse his ADA claim. Denying the motion preserves the NBME's ability to file a traditional motion for summary judgment and Densmore's right to properly respond to a motion for summary judgment. Denying the motion harms neither party.

## IV
## CONCLUSION

The Court should deny the NBME's motion to dismiss for several reasons. First, accepting the Complaint as true and drawing all reasonable inferences in Densmore's favor, the Complaint states a viable ADA claim against the NBME. Specifically, the only evidence before the Court – the Complaint, which the Court must accept as true – states an ADA cause of action where the ADA violation occurred within one year of the Complaint. Second, the NBME's motion, while dressed as a motion to dismiss, is really a premature motion to dismiss that denies

**Memorandum of Opposition – Page 8**

Densmore the traditional evidentiary benefits of a motion for summary judgment. Third, denying the motion to dismiss preserves the NBME's future ability to file a motion for summary judgment and will allow the parties to develop the evidence; granting it denies Densmore his access to this Court to enforce his ADA rights. Simply put, there is no harm or error in denying the motion.

The Court is being asked to grant what amounts to summary judgment without giving Densmore the opportunity to present evidence. Respectfully, Densmore asks the Court to deny the motion.

Respectfully submitted,

/s/

Vincent E. Nowak, SBOT# 15121550
1301 Daws Drive
Amarillo, Texas– 79124
806.679.7914
806.356.9112 (Fax)


/s/

Palmer Freeman
Post Office Box 8024
Columbia SC 29202
Tel 803-799-9400

**Formatted:** Indent: Left: 0", First line: 3", Space After: 0 pt, Line spacing: single

**Memorandum of Opposition – Page 9**

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing was served via Email on August 2, 2014, to opposing counsel, as follows:

Carol B. Ervin
25 CALHOUN ST, SUITE 400
CHARLESTON, SC 29401
T: 843-724-6641
Email: cervin@ycrlaw.com

Vincent E. Nowak, SBN 15121550
1301 Daws Dr.
Amarillo, TX 79124
Telephone: 806-679-7914
Facsimile: 806-356-9112