UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| DENNY DENSMORE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:15-CV-0096-JL |
| | ) |
| NATIONAL BOARD OF MEDICAL EXAMINERS, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT'S PROPOSED FINDINGS OF FACT AND RULING OF LAW**

Pursuant to Local Rule 16.2(b)(2) and the Court's September 16, 2015 Trial Notice, defendant National Board of Medical Examiners ("NBME") submits the following proposed findings of fact and rulings of law:

**Findings of Fact**

1. Defendant NBME administers the USMLE, which contains three steps. Step 1 assesses whether examinees understand and can apply important concepts of the sciences basic to the practice of medicine, with special emphasis on principles and mechanisms underlying health, disease and modes of therapy. Step 2 has two components, Clinical Knowledge (CK) and Clinical Skills (CS), and assesses the examinee's ability to apply medical knowledge, skills, and understanding of clinical science essential for the provision of patient care under supervision. Step 3 is not at issue in this action.

2. Densmore took and passed the GED, a standardized, timed examination, and in 1985 the State of South Carolina issued a Certificate of Equivalency.

3. In 1986, took the Armed Services Vocational Aptitude Battery ("ASVAB") without accommodations. Densmore tested at least within the average range compared to his age-based peers on every subtest, and in many cases tested a standard deviation above average.

4. Densmore received favorable performance reviews throughout his Navy career.

5. In 1990, while in the Navy, Densmore took the Scholastic Aptitude Test (SAT), a standardized, timed test. He did not seek accommodations, and his verbal and math scores were above the national average.

6.  In 1990, Densmore left active duty service, and enrolled at Greenville Technical College in South Carolina. He received an Associate in Arts degree, with a concentration in psychology and sociology, and an Associates in Science degree, with a concentration in physics and chemistry, in 1995, graduating with a cumulative GPA of 3.12. He received no formal accommodations at Greenville Tech, but he was sometimes given extra time if requested.

7.  From 1992 to 2000, while attending college, Densmore worked for General Electric as a turbine assembly and airfoil quality control technician. He did not request any accommodations while so employed. His supervisors generally rated his work as satisfactory and praised him for his close attention to detail.

8.  In 1996, Densmore enrolled at the University of South Carolina Spartanburg as an undergraduate, graduating with a Bachelor of Science degree in August 2001, with a major in biology and a cognate in chemistry. He graduated with a 2.83 GPA and made the Dean's List his first semester. Densmore did not request or receive formal accommodations for a learning disorder or any other disability, but reportedly requested and usually received extra time to take exams when he determined that he needed it.

9.  Densmore first took the Medical College Admission Test ("MCAT") in 1996 (while in college) and scored above average on the Verbal Reasoning section and average overall. He took the MCAT again in 2002, scoring in the average range in Verbal Reasoning and overall and well enough to gain admission to three Caribbean medical schools. He did not seek or receive any testing accommodation on the MCAT on either occasion.

10. Densmore matriculated at St. George's School of Medicine in Grenada in January 2003. Although he withdrew from four classes during his time at St. George's, he received Bs and Cs in the classes he did complete. When he left St. George's to attend MUSC after four terms, he was ranked number 321 out of 337 students.

11. Densmore transferred from St. George's to the Medical School of South Carolina ("MUSC") in 2005. That transfer was contingent upon him repeating his second year of medical school, thus making him eligible for graduation in 2008.

12. Densmore often did not attend classes at MUSC.

13. In May 2006, after experiencing problems in passing a pathology exam, he "self-referred" to the Counseling and Psychological Services ("CAPS") at MUSC in order to obtain accommodations on his exams and was seen by Alice Libet, Ph.D.

14. Densmore reported to Dr. Libet that he had "no history of previous academic problems or any mental health problems."

15. Dr. Libet's diagnosis was "reading disorder" and "rule out learning disorder NOS (e.g. Auditory Processing problem)." She also recommended that he have a "complete

        audiological examination." There is no indication that Densmore followed up on that recommendation.

16. Dr. Libet did not recommend additional time on the United States Medical Licensing Examination ("USMLE") or address that test in her 2006 report.

17. On June 30, 2006, Densmore took and passed the USMLE Step 1.

18. Densmore was also seen by Dr. Libet in 2006 for "depression and academic problems." Dr. Libet diagnosed Densmore with "Depressive Disorder NOS, as well as academic problems and a reading disorder." She recommended evaluation for medications that would be "helpful for managing depression," but Densmore declined the offer out of concern that having a record of taking medication for depression would jeopardize his military career.

19. In November 2006, Densmore was recommended for dismissal by the MUSC Professional Standards Committee following an incident in which he apparently treated a nurse in an unprofessional manner.

20. Densmore then again treated with Dr. Libet. The MUSC Committee eventually agreed to allow him to stay at the School on the condition that he receive continued counseling and treatment, which Dr. Libet provided through late May 2007.

21. Through May 2007, Dr. Libet diagnosed Densmore with a depressive disorder, a reading disorder, and a narcissistic personality disorder. Dr. Libet recommended that Densmore would benefit from "ongoing treatment for depression." She also recommended that he be "followed by his own physician for medications" for depression, and that he "continue individual therapy for depression" and to address "behavior patterns which continue to cause him problems in the professional setting." Densmore did not follow these recommendations.

22. On December 31, 2007, Densmore took and failed the Step 2 CK.

23. MUSC required passage of Step 2 in order to graduate from the School. Because Densmore failed the Step 2 CK, he did not graduate with his class in 2008.

24. In February 2008, Densmore sought an evaluation from Dr. Libet "for individual therapy relating to his upcoming Step 2 exam." Her evaluation reflects that Densmore "requested this additional evaluation since he would like to seek accommodations for Step 2 of the USMLE," and that he needed achievement testing because the NBME required it.

25. The results of the 2008 testing administered by Dr. Libet show that Densmore's oral, academic, reading, mathematics and written language skills were in the average range compared to "others at his grade level" and that his verbal language skills and comprehension and his ability to apply academic skills were superior.

26. In her 2008 report, Dr. Libet now diagnosed Densmore with a reading disorder (based on prior testing), as well as both a mathematics disorder and a disorder of written expression. She recommended that he receive extended time on the USMLE Step 2 exams. Densmore submitted Dr. Libet's evaluation with his 2008 request for accommodations.

27. On June 6, 2008, Densmore submitted a request for accommodations for the Step 2 CK based on three learning disabilities: reading, writing, and mathematics.

28. In August 2008 NBME informed Densmore that his application was incomplete and requested additional information. In October 2008, Densmore informed NBME that he would be providing additional information.

29. NBME suggested that Densmore provide evidence of his past performance on standardized tests, his history of accommodations in school, and asked that his evaluator resubmit the results of his 2008 tests of diagnostic tests of achievement reporting his performance against age-based peers, rather than the grade-based scores originally provided, since Densmore was forty years of age at the time the tests were administered.

30. Although Densmore provided some—but not all—of the requested information in late 2008 and early 2009, by then his eligibility period for Step 2 CK had expired on January 31, 2009.

31. On February 18, 2009, NBME notified Densmore in writing that his accommodation request file was closed.

32. On March 4, 2009, Densmore took and failed the Step 2 CS.

33. On November 30, 2009, Densmore submitted his SAT scores (which NBME had requested in 2008) and Armed Services Vocational Aptitude Battery ("ASVAB") scores to NBME.

34. On December 1, 2009, in response to Densmore's submission, NBME explained again to Densmore that his file had been closed in February 2009 and that he needed to register for the exam and submit a new request to Disability Services within the first three weeks of his new eligibility period.

35. In September 2010, Densmore retook the Step 2 CK and CS exams without submitting a request for accommodations and failed both exams.

36. In December 2010, Densmore was evaluated by Lydia J. Katz, Ph.D. in Walpole, New Hampshire. Dr. Katz noted Densmore sought evaluation after failing the Step 2 exams "in order to document his need for additional time on Part II of the USMLE," and that her office "had extensive experience working with medical and professional school students who have required documented evidence for the need for various reasonable accommodations on professional level examinations."

37. Densmore reported to Dr. Katz that he "had no problems learning to read and did well in school until his middle school years when he lost interest in academics."

38. Dr. Katz diagnosed Densmore with "Attention-Deficit/ Hyperactivity Disorder. Combined Type and a Reading Disorder."  Dr. Katz also recommended that Densmore "would do well to work with a software cognitive mapping program….as a study tool," that he "may benefit from a trial of medication as an intervention to improve working memory functions that are part of his underlying attention deficit disorder" and that he "may benefit from a period of counseling in order to work on mental flexibility, negativity, and personal sensitivity issues."  Densmore did not follow any of those recommendations.

39. In July 2011, the Associate Dean of MUSC wrote to Densmore (who had moved to New Hampshire in 2008) to inform him of the School's "Medical Degree Completion policy."  The letter informed Densmore that the School required students to complete their degree within six years of matriculation or face dismissal.  The letter informed Densmore that if he did not "take and pass Step 2CK by December 31, 2011" he would be "referred to the Progress Committee."

40. Densmore did not take the Step 2 CK or CS exams in 2011.

41. On January 5, 2012, the Progress Committee met and decided to recommend his dismissal to the Dean.

42. The Progress Committee raised concerns regarding Densmore's representations to it.  The Committee notes state that Densmore had represented that he had not completed another psychological evaluation since 2006 but that Densmore had informed that Committee "in a January 2011 email that he had completed an additional comprehensive psychological evaluation."  (emphasis in original).

43. On February 12, 2012, the Progress Committee recommended dismissal.  The Committee notes state that Densmore "did not appear to have prioritized completing the requirement [of completing Step 2] after an extensive period of time."  Densmore was advised that he could appeal that decision to the Dean of MUSC.

44. On April 25, 2012, Dean Etta Pisano, Vice President for Medical Affairs and Dean of the College of Medicine wrote to Densmore, giving him "one more opportunity to successfully pass your USMLE Step 2CK and Step 2CS exams," with a "non-negotiable" deadline of April 30, 2013.

45. Densmore did not take the Step 2 CK or CS exams in 2012.

46. Densmore did not submit a completed request for accommodations until December 19, 2012 (for the Step 2 CK) and January 15, 2013 (for the Step 2 CS).

5

47. Densmore asserted that he had been diagnosed with ADHD in 2010, as well as reading, writing, and mathematics disorders diagnosed in 2006 and 2008.

48. The materials Densmore submitted with his 2012 and 2013 requests showed that he had at least average range reading and writing skills compared to his age-based peers, and that this did not demonstrate impairments that limit a major life activity relative to most people in the general population.

49. The materials Densmore submitted regarding his academic and work history and achievements do not show he had a history of pervasive problems managing demands for attention or with executive functioning.

50. On March 20, 2013, NBME denied his accommodation requests, finding that Densmore had not demonstrated that he was disabled within the meaning of the ADA or that the requested testing accommodations were appropriate modifications of the USMLE Step 2 CK and Step 2 CS.

51. In April 2013, Densmore took and failed the USMLE Step 2 CK and CS exams.

52. In May 2013, Dr. Pisano informed Densmore that she was recommending his dismissal. Her letter states that Densmore had "been provided with every opportunity to succeed."

53. On July 12, 2013, Mark Sothman, Ph.D., the Vice President of Academic Affairs and Vice-Provost of MUSC, upheld Densmore's dismissal.  The letter states that Densmore made no attempt to take the Exam in 2011 and 2012 and that Sothman "did not see evidence of urgency in [Densmore's] attempt to resolve the issues….regarding NBME."

54. Densmore must be enrolled in medical school to be eligible to take the USMLE exam.

55. In November 2015, Densmore was evaluated by plaintiff's expert witness in this case, David Egerton, Ph.D.  According to Dr. Egerton, the evaluation was done to "provide data to the NBME pertinent to Denny's request for USMLE Step II accommodations."

56. Dr. Egerton attempted to answer questions about whether there were "indications of attentional deficits, … cognitive dysfunction….and ….emotional/behavioral concomitants" that impaired or detracted from his ability to respond efficiently to questions on the USMLE.

57. Dr. Egerton found that Densmore was taking Escitalopram for depression and had a prescription for Adderall for AD/HD.  Densmore denies that at the time of his evaluation with Dr. Egerton that he was taking, or had a current a prescription for Adderall.

58. Dr. Egerton's evaluation contains a "Personality Assessment Inventory."  The Inventory reports that Densmore "may not have answered in a completely forthright manner," and "tended to portray himself in a consistently negative or pathological manner," thereby possibly "distort[ing] the clinical picture" and "rais[ing] the possibility of an element of

exaggeration of complaints and problems" that should be considered when reviewing the report.

59. Dr. Egerton did not conclude that Densmore is substantially impaired relative to most people. He diagnosed Densmore with "Attention-Deficit/ Hyperactivity Disorder, Predominantly, Inattentive Presentation" and that one should "Rule Out…major Depressive Disorder (Recurrent Unspecified)."

## **Rulings of Law**

60. Densmore has not documented that he has a mental impairment that substantially limits his ability to perform a major life activity relative to most people in the general population. 42 U.S.C. § 12189; 28 C.F.R. 36.105(d)(v); 29 C.F.R. § 1630.2(j)(1)(ii); *Bibber v. Nat'l Bd. of Osteopathic Med. Exam'r, Inc.*, No. CV 15-4987, 2016 WL 1404157, at *6, 8 (E.D. Pa. Apr. 11, 2016); *Bach v. Law Sch. Admission Council,* 2014 U.S. Dist. LEXIS 124632, *5 (M.D.N.C. 2014); *Rumbin v. Ass'n of Am. Med. Colleges*, 803 F. Supp.2d 83, 93 (D. Conn. 2011); *Baer v. Nat'l Bd. of Med. Examiners*, 392 F. Supp. 2d 42, 46-47 (D. Mass. 2006).

*Claimed Reading Disability*

61. In his applications for accommodations on the USMLE, Densmore reports having a learning disability in reading.

62. The official name of this disability in the current edition of the Diagnostic and Statistical Manual of Mental Disorders ("DSM-5") is "Specific Learning Disorder with Impairment in Reading."

63. This diagnosis was made in his 2006, 2008 and 2010 evaluations, but not his 2015 evaluation.

64. The official diagnostic criteria in the DSM-5 require that someone have reading skills that are "substantially and quantifiably below those expected for the individual's chronological age."

65. In his 2006, 2008, 2010 and 2015 evaluations, on the only diagnostic tests of reading skills in which Densmore was compared to individuals of his own age group, his performance was in the average range or above.

66. One would expect to see a long history of reading troubles in someone who has a reading disability, including trouble initially learning to read as a child and further trouble in reading-based classes and courses throughout schooling.

67. Densmore's performance history on age-based, diagnostic reading test scores and on real-world, timed standard examinations, as well as his own reports that he did not have trouble learning to read, show that he has not been substantially impaired in reading.

*Claimed Mathematics Disability*

68. Densmore has reported having a learning disability in mathematics (also known as dyscalculia or mathematics disorder).

69. The official name of this disability in the current edition of the Diagnostic and Statistical Manual of Mental Disorders ("DSM-5") is "Specific Learning Disorder with Impairment in Mathematics."

70. This diagnosis was made in his 2008 evaluation, but not in his 2006, 2010, or 2015 evaluations.

71. The official diagnostic criteria in the DSM-5 require that someone have math skills that are "substantially and quantifiably below those expected for the individual's chronological age."

72. Almost every time that Densmore has been compared to age-based peers on diagnostic tests, his mathematics scores have been in the average range or above.

*Claimed Writing Disability*

73. Densmore has reported having a learning disability in mathematics (also known as dysgraphia or a disorder of written expression).

74. The official name of this disability in the current edition of the Diagnostic and Statistical Manual of Mental Disorders ("DSM-5") is "Specific Learning Disorder with Impairment in Written Expression."

75. This diagnosis was made in his 2008 evaluation, but not in his 2006, 2010, or 2015 evaluations.

76. The official diagnostic criteria in the DSM-5 require that someone have written expression skills that are "substantially and quantifiably below those expected for the individual's chronological age."

77. Every time that Densmore has been compared to age-peers on diagnostic tests of writing skills, his performance has been in the average range or above.

*Claimed AD/HD*

78. AD/HD is expected to cause problems everyday life and real-world activities for someone afflicted with it.

79. Densmore has not documented that he is affected by AD/HD in his everyday life and real-world activities. He was not diagnosed until he was 44 years old. Densmore has been in the Navy and Army National Guard and worked for eight years for GE, receiving generally favorable reviews which noted his attention to detail and ability to complete

tasks in a timely matter.  There is no objective evidence of significant problems functioning at these jobs due to inattention, hyperactivity, or impulsive behavior.

80. Densmore took the SAT and received above-average scores—without accommodations, and then took the MCAT and received at least average scores—without accommodations and was admitted to three medical schools, which suggests that Densmore is not substantially impaired due to inattention or hyperactivity when taking exams.

Respectfully submitted,

NATIONAL BOARD OF MEDICAL EXAMINERS

By its attorneys,

McLANE MIDDLETON, PROFESSIONAL ASSOCIATION

September 29, 2016

By:   /s/ Wilbur A. Glahn, III
Wilbur A. Glahn, III, Bar No. 937
bill.glahn@mclane.com
Benjamin B. Folsom, Bar No. 268352
benjamin.folsom@mclane.com
900 Elm Street, P.O. Box 326
Manchester, NH 03101
(603) 628-1469

### Certificate of Service

I hereby certify that on September 29, 2016, I served the foregoing via ECF electronic transmission in accordance with the Court's Administrative Procedures for Electronic Case Filing to the registered participants as identified on the Notice of Electronic Filing.

  /s/ Wilbur A. Glahn, III
Wilbur A. Glahn, III

11274764